E-FILED
Friday, 04 June, 2021  12:00:42 PM
Clerk, U.S. District Court, ILCD

# UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **JOSHUA RICHARDSON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| v. | ) | **No.: 20-cv-1285-JBM** |
| | ) | |
| **ROB JEFFREYS, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MERIT REVIEW- AMENDED COMPLAINT

Plaintiff, proceeding *pro se* and currently incarcerated at the Menard Correctional Center ("Menard"), files an amended complaint under 42 U.S.C. § 1983, alleging excessive force at the Pontiac Correctional Center ("Pontiac") and violations of due process at Menard. The case is before the Court for a merit review pursuant to 28 U.S.C. § 1915A. In reviewing the amended complaint, the Court accepts the factual allegations as true, liberally construing them in Plaintiff's favor. *Turley v. Rednour,* 729 F.3d 645, 649-51 (7th Cir. 2013). However, conclusory statements and labels are insufficient. Enough facts must be provided to "state a claim for relief that is plausible on its face." *Alexander v. United States,* 721 F.3d 418, 422 (7th Cir. 2013)(citation and internal quotation marks omitted). While the pleading standard does not require "detailed factual allegations," it requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Wilson v. Ryker*, 451 Fed. Appx. 588, 589 (7th Cir. 2011) quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).

## FACTS

Plaintiff files a 44-page complaint with an additional 132 pages of exhibits. These numerous exhibits were not reviewed, as they are not necessary in determining whether Plaintiff may proceed in this complaint. *See Fitzgerald v. Dep't of Corr.*, No. 07-61, 2007 WL 951861 at

*1 (W.D. Wis. Mar. 26, 2007) (declining at merit review to review exhibits not necessary to the complaint).

Plaintiff pleads that on August 4, 2019, he was involved in an altercation during recreation in the Big Yard. He asserts that he intervened while one inmate was beaten and "looked to be stabbed" by another. When Plaintiff responded, he was hit by a third inmate, knocked unconscious and severely beaten by multiple inmates. It appears that a large, generalized melee ensued, involving multiple inmates. A warning shot was fired to quell the disturbance.

Plaintiff claims that he suffered a concussion which was later confirmed when he was taken to the hospital. He alleges that as a result of the concussion, he went in and out of consciousness five times. Plaintiff claims that an inmate John Doe eyewitness will testify that while he was unconscious, he was maced in the face by an unidentified female guard. Plaintiff alleges that when he regained consciousness, the Jane Doe Defendant extended Plaintiff's arms upward toward the back of his head. Plaintiff began screaming that his arms would break. He felt both of his arms snap, fracturing his elbows, dislocating his right elbow, and dislocating both of his shoulders.

Plaintiff alleges that a Major John Doe was present and did not order that Plaintiff's hands be released, despite "seeing that both arms were clearly broken," and seeing that Plaintiff was in excruciating pain. Construing the allegations in the light most favorable to Plaintiff, the Court infers that the John Doe Defendant was present, witnessed the interaction between Plaintiff and Defendant Jane Doe, and had an opportunity to intervene, if deemed appropriate. As a result, Plaintiff sufficiently pleads that Defendant John Doe exhibited deliberate indifference in failing to intervene to prevent the harm. *See Watkins v. Ghosh*, No. 11- 1880, 2014 WL 840949, at *3

(N.D. Ill. Mar. 4, 2014) (in a claim for failure to intervene, a plaintiff must establish that the defendant knew of the unconstitutional conduct taking place and had a realistic opportunity to intervene, but failed to act).

Plaintiff also alleges that the Defendant Major Doe was deliberately indifferent for failing to arrange Plaintiff's transportation to a local hospital for two hours. In the interim, Plaintiff was taken to the healthcare unit where he regained consciousness while two nurses were treating him. One of the nurses told him his shoulders had been dislocated and had to be re-set. Plaintiff notes, however, that this is not corroborated in the medical record.

Plaintiff alleges that while in the healthcare unit, his hands remained cuffed behind his back. His requested that the handcuffs be removed, and this was initially refused until, at the nurses' urging, a tactical team officer removed the handcuffs. Plaintiff claims to have permanent scarring on the top of his right hand due to the swelling from his injuries and the handcuffs becoming too tight. He does not identify any individual whom he holds responsible for this.

Plaintiff was thereafter taken by ambulance to the Saint James Hospital emergency room. There, a physician was allegedly critical of the two-hour delay in transporting Plaintiff to the hospital. Diagnostic tests were done which documented multiple fractures to both elbow and a dislocation of the right elbow. On August 5, 2019 , Plaintiff was transferred to the OSF Saint Francis Medical Center in Peoria. There, he was diagnosed as having suffered a concussion. He was discharged the following day, August 6, 2019, and taken back to Pontiac where he was placed in the health care unit.

On August 7, 2019, Plaintiff was transferred to Menard, where he spent three weeks in the infirmary. On August 20, 2019, while at Menard, he was served with a disciplinary report for the incident described and placed in segregation. Plaintiff went to a hearing before the

Adjustment Committee, and asserts that Menard Defendants Schoenbeck, Gladney and Lawrence violated due process by refusing to view the relevant video and subsequently finding him guilty of Dangerous Disturbances, Fighting, and Disobeying a Direct Order. Plaintiff also names Menard grievance officer Clendenin and Chief administrative officer Jones for failing to undertake an adequate investigation. Plaintiff asserts that his conviction was later overturned and expunged by the Administrative Review Board.

Plaintiff names Rob Jeffreys, the Acting Director of the Illinois Department of Corrections ("IDOC"); former Pontiac Warden Teri Kennedy; and Pontiac Security Warden Melvin French "for discovery purposes" only and does not plead any claims against them. Plaintiff requests declaratory relief, that an injunction issue as to the Menard Warden, and that he be awarded compensatory and punitive damages.

## ANALYSIS

In claims of excessive force, the relevant inquiry is "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986). This is so, as prison officials considering the use of force must balance the threat presented to inmates and prison officials against the possible harm to the inmate against whom the force is to be used. Here, as in his original complaint, Plaintiff has alleged a colorable excessive force claim against the Pontiac Jane Doe Officer.

Plaintiff's claims against Major John Doe are vague where he claims that Defendant did not order the handcuffs to be removed although Plaintiff's arms were "clearly broken." As the Court previously determined, however, when construing Plaintiff's pertinent allegations in the light most favorable to him, Plaintiff states enough to infer at the pleadings stage that Defendant

4

John Doe could have recognized that Plaintiff's arms were severely injured even though diagnostic testing had not yet been done.

Plaintiff will not be allowed to proceed against this Defendant, however, as to the allegedly two-hour delay in transferring him to the hospital. The facts do not suggest that Defendant John Doe delayed in taking Plaintiff to the healthcare unit. There, he was attended by two nurses who reportedly reset his dislocated shoulder. Plaintiff fails to plead that Defendant John Doe's actions in having Plaintiff initially assessed and treated prior to transfer showed the culpable state of mind necessary to plead deliberate indifference. "With respect to the culpable state of mind, negligence or even gross negligence is not enough; the conduct must be reckless in the criminal sense." *Lee v. Young*, 533 F.3d 505, 509 (7th Cir. 2008)(quoting *Greeno v. Daley*, 414 F.3d 645, 652 (7th Cir. 2005)); *Farmer v. Brennan*, 511 U.S. 825, 836-37 (1994). Plaintiff must demonstrate that defendant "actually knew of and disregarded a substantial risk of harm." *Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016) (emphasis in original) (internal citations omitted).

Plaintiff names Defendants Jeffreys, Kennedy and French, but does not allege any claims against them. To plead liability on the part of a Defendant, Plaintiff must allege that the Defendant "caused or participated in a constitutional deprivation." *Pepper v. Village of Oak Park*, 430 F.3d 809, 810 (7th Cir.2005) (citations omitted). Defendants Jeffreys, Kennedy and French are DISMISSED.

As the only remaining Defendants are not identified by name, the Court will add current Pontiac Warden Leonta Jackson as a Defendant for the sole purpose of aiding in establishing the identity of the Doe Defendants. *Donald v Cook Co. Sheriff's Dept.*, 95 F.3d 548, 556 (7th Cir. 1996) ("the court may assist the plaintiff… by allowing the case to proceed to discovery against

5

high-level administrators with the expectation that they will identify the officials personally responsible…) Defendant Jackson will be dismissed once the Doe Defendants are identified. It will be Plaintiff's responsibility, through initial disclosures and discovery, to identify the Jane and John Doe Defendant. The failure to do so will result in the dismissal of these Defendants.

Plaintiff's due process claims against the Menard Defendants are unrelated to the excessive force claim against the Pontiac Jane Doe Defendant and represent a misjoinder. While a party may join unrelated claims against a single defendant, it cannot join different defendants in unrelated claims. "Federal Rule of Civil Procedure 20 permits plaintiffs to join together in one lawsuit if they assert claims "arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to these persons will arise in the action." *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007). "[M]ultiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2." The allegations against the Pontiac Defendant and the Menard Defendants do not arise from the same transaction or occurrence and may not be pled in the same complaint. The Menard Defendants Schoenbeck, Gladney, Lawrence, Jones and Clendenin are DISMISSED.

**IT IS THEREFORE ORDERED:**

1.      As previously noted, this case shall proceed on the excessive force claim asserted against the Jane Doe Defendant. It will also proceed on the claim that Defendant John Doe failed to intervene when Defendant Jane Doe exerted unconstitutional force against Plaintiff. All other claims will not be included in the case, except in the Court's discretion upon motion by a party for good cause shown, or by leave of court pursuant to Federal Rule of Civil Procedure 15. The current Pontiac Warden, Leonta Jackson, is to be added to the caption for the sole purpose of

6

aiding in identifying the Doe Defendants. Defendants Jeffreys, Kennedy, French, Schoenbeck, Gladney, Lawrence, Jones and Clendenin are DISMISSED.

2.      The Clerk is directed to send to Defendant Jackson, pursuant to this District's internal procedures: 1) a Notice of Lawsuit and Request for Waiver of Service; 2) a Waiver of Service; 3) a copy of the Complaint; and 4) a copy of this Order.

3.       If Defendant fails to sign and return a Waiver of Service to the Clerk within 30 days after the Waiver is sent, the Court will take appropriate steps to effect formal service on that Defendant and will require that Defendant pay the full costs of formal service pursuant to Federal Rule of Civil Procedure 4(d)(2).

4.      If Defendant no longer works at the address provided by Plaintiff, the entity for which Defendant worked at the time identified in the Complaint shall provide to the Clerk Defendant's current work address, or, if not known, Defendant's forwarding address. This information will be used only for purposes of effecting service. Documentation of forwarding addresses will be maintained only by the Clerk and shall not be maintained in the public docket nor disclosed by the Clerk.

5.      Defendant shall file an answer within the prescribed by Local Rule. A Motion to Dismiss is not an answer. The answer it to include all defenses appropriate under the Federal Rules. The answer and subsequent pleadings are to address the issues and claims identified in this Order.

6.      Plaintiff shall serve upon Defendant who has been served, but who is not represented by counsel, a copy of every filing submitted by Plaintiff for consideration by the Court and shall also file a certificate of service stating the date on which the copy was mailed.

Any paper received by a District Judge or Magistrate Judge that has not been filed with the Clerk or that fails to include a required certificate of service will be stricken by the Court.

7.    Once counsel has appeared for Defendant, Plaintiff need not send copies of filings to that Defendant or to Defendant's counsel. Instead, the Clerk will file Plaintiff's document electronically and send notice of electronic filing to defense counsel. The notice of electronic filing shall constitute notice to Defendant pursuant to Local Rule 5.3. If electronic service on Defendant is not available, Plaintiff will be notified and instructed accordingly.

8.    Counsel for Defendant is hereby granted leave to depose Plaintiff at Plaintiff's place of confinement. Counsel for Defendant shall arrange the time for the depositions.

9.    Plaintiff shall immediately notice the Court of any change in mailing address or phone number. The Clerk is directed to set an internal court deadline 60 days from the entry of this Order for the Court to check on the status of service and enter scheduling deadlines.

**IT IS FURTHER ORDERED THAT THE CLERK IS DIRECTED TO:**

1) ATTEMPT SERVICE ON DEFENDANT PURSUANT TO THE STANDARD PROCEDURES;

2) VACATE THE PRIOR DEADLINE AND SET AN INTERNAL COURT DEADLINE 60 DAYS FROM THE ENTRY OF THIS ORDER FOR THE COURT TO CHECK ON THE STATUS OF SERVICE AND ENTER SCHEDULING DEADLINES; AND,

3) LASTLY, IT IS ORDERED THAT IF DEFENDANT FAILS TO SIGN AND RETURN A WAIVER OF SERVICE TO THE CLERK WITHIN 30 DAYS AFTER THE WAIVER IS SENT, THE COURT WILL TAKE APPROPRIATE STEPS TO EFFECT FORMAL SERVICE THROUGH THE U.S. MARSHAL'S SERVICE ON DEFENDANT AND

WILL REQUIRE THAT DEFENDANT TO PAY THE FULL COSTS OF FORMAL SERVICE

PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 4(d)(2).


  6/4/2021                                              s/Joe Billy McDade
ENTERED                                          JOE BILLY McDADE
                                                 UNITED STATES DISTRICT JUDGE